**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| LEE EGGERT, SR.,            Plaintiff,      v.    T. RICHARD BETHEA, *et al.*,            Defendants. | Civil Action No. 11-7166 (MAS)  **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This action grew out of a struggle for political control of a volunteer organization that responds to medical emergencies in four neighboring New Jersey municipalities. Plaintiff Lee Eggert Sr. ("Eggert"), a former Mayor of Tuckerton Borough, New Jersey, claims that his expulsion from Defendant Great Bay Regional Volunteer Emergency Medical Services ("Great Bay" or "the organization") violated his free expression and due process rights. He seeks monetary damages under 42 U.S.C. § 1983 from Great Bay itself and various Trustees and officers of that organization. Eggert also asks this Court to exercise its supplemental jurisdiction to interpret and equitably enforce certain provisions of the organization's Bylaws.

Currently pending are two defense motions for summary judgment. (ECF Nos. 41, 42.) Eggert opposed both motions in a single submission (Pl.'s Opp'n, ECF No. 45), and Defendants replied (ECF Nos. 48, 49). The Court will rule on the motions without oral argument, pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions are granted.

I.   **Facts**

The material facts in this matter are not disputed. Viewed in the light most favorable to Eggert, they are as follows.

A.   **Great Bay**

In 1999, the adjacent municipalities of Bass River Township, Eagleswood Township, Little Egg Harbor Township, and Tuckerton Borough (the "service municipalities") jointly established a non-profit corporation, Great Bay, to provide volunteer emergency medical services inside their collective borders. Great Bay is an all-volunteer organization, funded through public contributions and private donations. (Bethea Dep. 102.) The mayor of each service municipality serves as an *ex officio* member of Great Bay's Board of Trustees, which meets regularly to set policy, approve expenditures, and oversee the organization's affairs. (Statement of Material Facts, ECF No. 42-1, ¶¶ 1-4.)

Great Bay's 1999 Bylaws granted the mayors, or "governmental Trustees," provisional powers of appointment within the organization. Under the relevant sections, a three-vote majority of the governmental Trustees selected "at-large Trustees" to fill the Board's non-governmental seats, executive officers to administer the organization's day-to-day operations, and line officers to command Great Bay's rank-and-file members in the field. After December 31, 2001, the selection of at-large Trustees and officers was set to pass to the rank-and-file members of the organization through bi-yearly elections. (Bylaws, Art. IV, § 4.1.)

No elections were ever held at Great Bay. At all times relevant to this action, the mayors and their appointees exercised full control of Great Bay's management. (Eggert Cert., ECF No. 45-3, ¶¶ 1-2.)

**B.      Eggert's Tenure at Great Bay**

Plaintiff Lee Eggert Sr. joined Great Bay's Board as a governmental Trustee upon his election to the Tuckerton mayoralty in 2007. He soon became an outspoken critic of what he called "governmental oversight" of the organization. Eggert pressed the other governmental Trustees to permit the members to elect officers. When they refused, Eggert accused them of flaunting the Bylaws in an effort to consolidate their own power in the organization. (Eggert Cert., ECF No. 45-3, ¶ 2.)

Eggert's opposition to the appointment system brought him into conflict with one of the principal stalwarts of Great Bay's established order, Defendant Albert Gentless. Soon after Gentless joined Great Bay in 2006, he was appointed to serve as a line officer and at-large Trustee. His wife, Defendant Patricia Gentless, served as President of the organization at the same time. (A. Gentless Dep. 17-19, 42-43.)

In June 2009, an advertisement for Albert Gentless's personal business appeared on raffle tickets sold to the public as part of Great Bay's annual fundraiser. When Eggert discovered the advertisement, he circulated an email to Great Bay's membership accusing Gentless and his wife of self-dealing. Eggert's charges prompted no response from the Board. (A. Gentless Dep. 24, 27-30; Loughry Cert., ECF No. 46, Exh. P.)

A few months later, it was Eggert who faced charges of misconduct. Sometime in November, Eggert posted a photograph of himself and two other members on a social bulletin board in Great Bay's headquarters. The photo was soon removed. Eggert then posted a second copy of the same photo. This too was removed. Convinced that he was being persecuted for political reasons but unsure of the culprit's identity, Eggert sought to draw the photo-snatcher

3

into the open. To that end, he posted a third copy of the photo with an inflammatory message scrawled on the back. The message read:

> SOME DEGENERATE ASSHOLE STOLE THE PREVIOUS TWO COPIES OF THIS PRINT.
>
> WHAT IS MORE OFFENSIVE . . .? THIS PHOTO OR THE ONE OF LAUREN IN HER BATHING SUIT????? OR A 60-SOMETHING YEAR OLD WOMAN TRYING TO BE A TEENAGER?????
>
> IF YOU TAKE THIS DOWN, PLEASE RETURN IT TO LEE, SR.
>
> THANKS.

(Monahan Cert., ECF No. 42-3, Exh. H.) While it is not clear who discovered the message, news of it soon reached Defendant Lauren Meglino-Runza, the member whose photo Eggert had criticized. Meglino-Runza reported the incident to the Board and demanded that Eggert apologize for comments that, in her opinion, verged on sexual harassment. Eggert refused to apologize and, on December 2, 2009, the Board voted to suspend him from Great Bay for thirty days. (Eggert Cert., ECF No. 45-1, ¶¶ 34-40.)

In January 2010, the governmental Trustees voted three-to-one to appoint Albert Gentless squad Captain. The lone dissenter was Eggert, who objected to husband and wife serving simultaneously as squad Captain and President. (A. Gentless Dep. 42-43; Eggert Cert., ECF No. 45-1, ¶ 31.) As Captain, Gentless assumed overall command of field operations and membership training. (Bylaws, Art. V, § 5.6(II)(a).)

Eggert vented his dissatisfaction with Great Bay's management in an editorial that appeared in a local newspaper on February 7, 2010. In the editorial, Eggert cited Gentless's appointment to the captaincy as evidence of mayoral mismanagement. According to Eggert, "the majority of the squad" would have "preferred" a more experienced candidate than Gentless. Eggert also questioned the competency and integrity of several other recently appointed officers.

4

According to Eggert, the new squad lieutenant was unreliable and had "recently sent all squad members an E-mail saying a fellow member suffered from an 'alcohol induced dementia' among other things." "[T]he choice for sergeant had been put in jail last year and the last time I spoke to him, he had not returned an item he stole." The new squad corporal had been treasurer of a fire company whose members "had been using fire co. credit cards for personal purchases." (Eggert Cert., ECF No. 46-5, Exh. E.)

Eggert's editorial also resurrected the November 2009 bulletin board controversy. In Eggert's view, the Board should have punished Meglino-Runza for making "false allegations" of sexual harassment and investigated "who was stealing the photos" in the first place. Eggert concluded: "As mayor of Tuckerton I will continue to do what I think is in the overall best interest of the people of Tuckerton." (*Id.*)

At a Board meeting two weeks later, Captain Gentless presented "formal charges" against Eggert, who was in attendance but had not received advance notice of the accusations. In one of the charges, Gentless cited the editorial as a "clear violation" of Great Bay's "Information Policy" insofar as it "was derogatory and serves to undermine the public trust . . . and is inconsistent [with] and not in the best interest of the organization." The Board sustained the charges and suspended Eggert's membership for 90 days. (Loughry Cert., ECF No. 46, Exh. Q; Eggert Cert., ECF No. 45-3, ¶¶ 15-19.)

At a subsequent meeting on April 28, a majority of Board Members in attendance, including two governmental Trustees – Defendants T. Richard Bethea and Raymond Gormley – and one at-large Trustee – Defendant Hannah Johnsen-Yadevia – voted to terminate Eggert's membership in Great Bay. Eggert, who had not attended the meeting, received notice of the

5

Board's vote from the squad's lawyer. (Eggert Cert., ECF No. 45-3, ¶ 20; Eggert Cert., ECF No. 46-5, Exh. F.)

## II. Standard of Review

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In evaluating the evidence, the Court is "required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). However, where the party opposing summary judgment ultimately bears the burden of proof as to a dispositive issue, that party "bears the burden of production under Rule 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party cannot rely on unsupported assertions or bare allegations to defeat summary judgment. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 308 (3d Cir. 2008).

## III. Analysis

Defendants argue that because Great Bay is a private entity, the conduct of its officials need not comply with the Bill of Rights. Although there is some authority to support their position, the Court declines to adopt it here. Instead, the Court finds that Eggert has failed to present a cognizable claim under the First or Fourteenth Amendments.

### A. State Action

Purely private conduct, however wrongful, is not actionable under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). It can be difficult to distinguish between state and private action. In close cases, courts look at the "nexus between the State and the challenged

action'" to determine whether the defendant's conduct "'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Defendants argue that *Groman v. Township of Manalapan*, 47 F.3d 628 (3d Cir. 1995) provides the template for the state-action analysis in this case. In *Groman*, a panel of the Third Circuit confronted § 1983 claims against Englishtown-Manalapan First Aid Squad volunteers who allegedly failed to treat plaintiff for injuries he had sustained in a struggle with the police. *Id.* at 641-42. The panel's state-action analysis, in relevant part, considered "the relationship between the first aid squad and the Township," observing that:

> [t]he first aid squad members here were not employed by the Township. They were volunteers, and the squad itself was a private organization. The first aid squad received at least $25,000 annually from the Township, but it is not clear how much of the squad's total budget this amount comprised, nor what, if any, oversight the Township exercised over the squad's operations. Defendants' unrebutted assertion is that the first aid squad received no health benefits or insurance coverage from either Manalapan or Englishtown and that *the squad was not under the formal direction or control of either municipality*.

*Id.* at 638, 642 (emphasis supplied). *Groman* concluded that the first aid squad members were not state actors because there was "no evidence that the Township controlled the [their] professional conduct." *Id.* at 643.

This case is distinguishable from *Groman* in two significant respects. First, it is undisputed that Great Bay, unlike the squad in *Groman*, is subject to significant municipal "direction [and] control." Mayoral control of the organization was, after all, the core issue in Eggert's feud with Great Bay's other Trustees. *See Brentwood Acad.*, 531 U.S. at 298 (recognizing that an organization's "nominally private character" may be "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings"). Second, the constitutional challenges in this case do not arise from the conduct of

7

Great Bay volunteers in the field. Rather, Eggert's claims target the conduct of the governmental Trustees – who held sway in Great Bay's affairs precisely because they were municipal officials – and their appointees. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51 (state-action analysis turns on "'the *specific conduct* of which the plaintiff complains'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis supplied).

In light of these differences, the Court is not convinced that *Groman* dictates the outcome of this case. Rather than resolve the state-action issue, the Court will assume that Defendants are state actors and proceed to examine the merits of Eggert's constitutional claims.

### B. First Amendment Claim

Eggert's First Amendment retaliation claim rests on the theory that his expulsion from Great Bay was tantamount to the dismissal of a public employee for speaking out on matters of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 417-20 (2006) (discussing First Amendment rights of public employees). Retaliation claims arising in the "public employment context" are subject to a "three-part test." *Montone v. City of Jersey City*, 709 F.3d 181, 192-93 (3d Cir. 2013); *see Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 725-29 (D.N.J. 2013) (applying three-part analysis to volunteer firefighter's First Amendment claim), *aff'd*, 2014 WL 998496 (3d Cir. March 17, 2014). First, the plaintiff must have been speaking as a citizen, rather than as a public employee discharging employment duties. *Id.* at 193. Second, the plaintiff's statements must have addressed a matter of public concern as opposed to a personal interest. *Id.* Third, the plaintiff's employer must *not* have had "'an adequate justification for treating the employee differently from any other member of the general public[.]'" *Id.* (quoting *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009)).

8

Assuming Eggert's claim survives the first two parts of this analysis, it falls short on the third, which requires the Court to apply the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under *Pickering*, the Court weighs "the First Amendment interest of the employee against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011). In performing this analysis, the Court asks, among other things, whether the speech at issue "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

The balance of interests in this case plainly tips in the Defendants' favor. Eggert's February 2010 editorial crossed the line separating political discourse from personal invective. Eggert questioned whether Gentless was competent to act as squad Captain, attacked Meglino-Runza for making "false" accusations of sexual harassment, and suggested that several other Great Bay officials were guilty of improprieties including theft, misappropriation of funds, and defamation. Such unrestrained vitriol is almost certain to "affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency." *Connick v. Myers*, 461 U.S. 138, 150-51 (1983). These concerns are especially acute in a small organization whose members work together in responding to emergencies. *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1367 (3d Cir. 1993) (approving district court's observation that "[c]arping criticism and abrasive conduct have no place in a small [volunteer fire department] that depends upon common loyalty" among its members).

Under the circumstances in this case, the First Amendment did not restrain Defendants from taking action to prevent Eggert from creating further disruption in Great Bay's ranks. His First Amendment claim therefore fails as a matter of law.

### C. Due Process Claims

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Eggert's due process claim fails on the first prong of this analysis because he presents no evidence of a cognizable liberty or property interest in his position at Great Bay. *See Versarge*, 984 F.2d at 1370-72 (rejecting former volunteer firefighter's due process claims on identical grounds). In the absence of a valid property interest, Eggert's substantive due process claim must also fail. *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (to prevail on a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies") (quotation marks and citation omitted).

### D. State Law Claim

Having disposed of Eggert's federal claims, the Court exercises its discretion under 28 U.S.C. § 1367(c)(3) to decline jurisdiction over Count Three of his Complaint, which seeks equitable relief under New Jersey state law.

10

IV.	**Conclusion**

For the reasons set forth above, and for other good cause shown, Defendants' motions for summary judgment are granted. An appropriate Order follows.

/s/ Michael A. Shipp
Michael A. Shipp
United States District Judge

**Dated:** March 31, 2014